UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSBEL GARCIA,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

**DECISION AND ORDER**
13-CR-83S (9)

## I. INTRODUCTION

Presently before this Court is Petitioner Josbel Garcia's petition for a writ of error *coram nobis*. See Docket No. 701. Garcia, a citizen of Cuba now facing removal from the United States, contends that vacatur of his conviction is required because his attorney was ineffective in advising him about the immigration consequences of his guilty plea, in violation of his Sixth Amendment rights. The government opposes Garcia's petition. For the reasons discussed below, Garcia's petition is denied.

## II. BACKGROUND

On December 8, 2017, Garcia appeared before this Court, waived indictment, and pleaded guilty to a single-count superseding information that charged him with violating 21 U.S.C. § 843 (b) (use of a communication facility to facilitate a drug felony). See Docket Nos. 607-610. Garcia pleaded guilty with the benefit of a plea agreement, in which he acknowledged, *inter alia*, his understanding that, due to his guilty plea and conviction, he "may be removed from the United States, denied citizenship, and denied admission to the United States in the future." See Plea Agreement, Docket No. 609, ¶ 13. He further acknowledged his understanding of the immigration consequences of his guilty plea as

1

follows:

> The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status as the defendant is not a citizen of the United States. Under federal law, the crime to which the defendant is pleading guilty is a removable offense. The defendant understands that, as a result of the offense to which the defendant is pleading guilty, removal is presumptively mandatory. Removal and other immigration consequences will be the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of a conviction in this case on the defendant's immigration status. The defendant nevertheless wants to plead guilty regardless of the immigration consequences of a conviction on the defendant's immigration status, even if the consequence is the defendant's automatic removal from the United States.

See id. ¶ 14.

During the plea allocution, Garcia likewise acknowledged his understanding of the immigration consequences of his guilty plea and conviction as follows:

| | |
|---|---|
| Court: | And in the event that you are convicted you may be subject to remova[l] from the United States. And if that happens, you cannot reenter without the express authority of the Attorney General or the Secretary of Homeland Security. Do you understand that? |
| Defendant: | Yes, Your Honor. |
| Court: | And I take it, citizenship is still an issue; is that right? |
| Defense counsel: | Mr. Garcia is Cuban, Judge. I have gone over that and he sought other counsel on that issue. He fully understands the contents of section 5 [Alien Status]. |
| Court: | All right. And so he is not a US citizen? |
| Defense Counsel: | He is not a citizen. |

2

Plea Transcript, Docket No. 669, pp. 8-9.

On July 30, 2018, the assigned probation officer filed the Presentence Investigation Report, which notes that "[c]ontact with Immigration & Customs Enforcement revealed that following the defendant's sentence in this case, he may be placed in removal proceedings . . . [t]he issue of possible deportation will be decided thereafter."  See Presentence Investigation Report, Docket No. 620, ¶ 78.  In his Statement with Regard to Sentencing Factors, Garcia acknowledged that he reviewed the Presentence Investigation Report with his lawyer and did not object to it.  See Docket No. 625.

On September 12, 2018, this Court sentenced Garcia to time served and one year of supervised release.  See Docket Nos. 626, 627.  During the sentencing proceeding, the following exchange occurred concerning Garcia's immigration status:

> Court: . . . There was a reference to some deportation concerns here.  Where are we on that?
>
> Defense counsel: So, Judge, Mr. Garcia and I have, obviously, been discussing this since I was assigned.  I wasn't the first lawyer on the case, but I did encourage him to consult with an immigration lawyer.
>
> And basically, he is Cuban, but he's a permanent resident here in the United States, so under the Cuban Adjustment Act, as the Court knows, he is afforded certain protections.
>
> It doesn't mean a deportation order can't be filed against him; however, in the last two years, only about 200 Cuban nationals have actually been deported.  Most Cubans, even if they're taken into custody by ICE, can only be held for up to 12 months and then generally are released, because we don't have official relations with the

|  | |
|---|---|
| | Castro administration in Cuba. |
| | And so Mr. Garcia, now that he has been convicted of a felony crime, would be subject to a deportation order but, according to an immigration attorney I spoke with and the information that he obtained, unlikely to actually be deported. |
| Court: | All right.  There's nothing that's of record at the present time.  I mean, that's just looming, right? |
| Defense counsel | Correct, and it may loom for the rest of his life in America. |

Sentencing Transcript, Docket No. 668, pp. 5-6.

The Clerk of Court entered judgment on September 18, 2018.  See Docket No. 627.  Garcia did not appeal nor did he collaterally attack his sentence under 28 U.S.C. § 2255.

On July 23, 2019, the Department of Homeland Security issued Garcia a Notice to Appear in removal proceedings, charging him as removable from the United States under §§ 237 (a)(2)(A)(iii) and (a)(2)(B)(i) of the Immigration and Nationality Act due to his conviction in this case.  See Affidavit of Jillian Nowak, Esq.[1] ("Nowak Aff."), Docket No. 696-3, ¶ 6.  Thereafter, Immigration Judge Susan Aikman sustained the charges of removability on February 26, 2020, and subsequently denied Garcia's applications for relief from removal and ordered him deported to Cuba on June 8, 2020.  See id. at ¶¶ 7-9.

In an attempt to avoid removal from the United States, Garcia filed the instant petition for a writ of error *coram nobis* to vacate his conviction on August 20, 2020, two years and nine months after he entered his guilty plea.  See Docket No. 701.  After full

---

[1] Ms. Nowak represents Garcia in his current immigration proceedings.  See Nowak Aff., ¶ 2.

4

briefing, this Court took the petition under advisement without oral argument on September 17, 2020.  See Docket Nos. 696, 701, 705, 710.

### III. DISCUSSION

#### A. Legal Standard

A writ of error *coram nobis* is an "extraordinary remedy" authorized under the All Writs Act, 28 U.S.C. § 1651 (a), that "issues only in extreme cases."  United States v. Denedo, 556 U.S. 904, 911, 916, 129 S. Ct. 2213, 173 L. Ed. 2d 1235 (2009); see also Porcelli v. United States, 404 F.3d 157, 158 (2d Cir. 2005).  The writ is "typically available only when habeas relief is unwarranted because the petitioner is no longer in custody," Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014), and is "a remedy of last resort," Fleming v. United States, 146 F.3d 88, 89 (2d Cir. 1998) (per curiam), that is "strictly limited to those cases in which 'errors . . . of the most fundamental character' have rendered 'the proceeding itself irregular and invalid,'" Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (quoting United States v. Carter, 437 F.2d 444, 445 (5th Cir. 1971) (per curiam)).  Such is the rarity of the writ that the United States Supreme Court has stated that "'it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate.'"  Carlisle v. United States, 517 U.S. 416, 429, 116 S. Ct. 1460, 134 L. Ed. 2d 613 (1996) (quoting United States v. Smith, 331 U.S. 469, 475 n.4, 67 S. Ct. 1330, 91 L. Ed. 1610 (1947)).

To obtain a writ of error *coram nobis*, a petitioner must establish three elements.  First, the petitioner must demonstrate that "there are 'circumstances compelling such action to achieve justice.'"  Foont, 93 F.3d at 79 (quoting Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992)).  As particularly relevant here, "[i]neffective assistance of

5

counsel, including during the plea-bargaining process, is a circumstance compelling the grant of a timely application for coram nobis relief." Doe v. United States, 915 F.3d 905, 910 (2d Cir. 2019) (citing Kovacs, 744 F.3d at 49).

Second, the petitioner must establish that "'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" Foont, 93 F.3d at 79 (quoting United States v. Morgan, 346 U.S. 502, 512, 74 S. Ct. 247, 98 L. Ed. 248 (1954)). While no statute of limitations applies, the writ may be barred by the passage of time. See Foont, 93 F.3d at 79. Indeed, "[c]oram nobis relief is not available if the petitioner could have sought earlier relief, including on direct appeal or through *habeas corpus*." Martinez v. United States, 19-CV-2044 (WFK), 2019 WL 2124513, at *2 (E.D.N.Y. May 15, 2019) (citing Calvert v. United States, No. 06-CV-1722 (CBA), 2007 WL 160918, at *3 (E.D.N.Y. Jan 17, 2007)). Whether the passage of time bars relief turns on the reasons the petitioner failed to raise the issues earlier, with particular focus on "whether the petitioner is able to show justifiable reasons for the delay." Doe, 915 F.3d at 915.

Third, the petitioner must establish that he "'continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" Foont, 93 F.3d at 79 (quoting Nicks, 955 F.2d at 167). To satisfy this element, a "petitioner must at least point to a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm." Fleming, 146 F.3d at 91 (finding that speculative harms do not state a claim for *coram nobis* relief). Continuing immigration consequences generally meet this standard. See, e.g., Kovacs, 744 F.3d at 49 ("There is no doubt that [defendant's] likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction.").

The petitioner's burden on each of these elements is heavy because the court

6

"must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner."  United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000); see also Foont, 93 F.3d at 78-79 ("[T]he petitioner's conviction [is] presumed to be correct, and 'the burden rests on the accused to show otherwise.'") (quoting Morgan, 346 U.S. at 512).

### B. Garcia's Petition

Garcia maintains that issuance of the writ is required to achieve justice because his guilty plea was the product of ineffective assistance of counsel, rather than a knowing, voluntary, and intelligent decision.  He contends that he acted as soon as he learned that his lawyer's advice was wrong and that he continues to suffer legal consequences as a result of his guilty plea in the form of imminent removal from the United States.  As explained below, however, Garcia fails to demonstrate that counsel's erroneous advice actually prejudiced him.  A writ of error *coram nobis* is therefore not necessary to achieve justice.

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend VI.  It is well established that "the right to counsel is the right to the effective assistance of counsel."  Eze v. Senkowski, 321 F.3d 110, 124 (2d Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  This right extends to the plea-bargaining process, where ineffective assistance of counsel can invalidate a guilty plea "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of the defendant's decision to plead guilty."  United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005); see also

Padilla v. Kentucky, 559 U.S. 356, 364, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

To demonstrate ineffective assistance of counsel, both prongs of the two-part test from Strickland v. Washington must be met: (1) that counsel's performance "fell below an objective standard of reasonableness;" and (2) that counsel's "deficient performance prejudiced" the defendant. 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first Strickland prong, it must be established that counsel's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms" such that it was "outside the wide range of professionally competent assistance." Id. at 688, 690. Under this prong, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and be watchful 'to eliminate the distorting effects of hindsight.'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689). This is because "[t]here are countless ways to provide effective assistance in any given case" and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689 (internal citation omitted). The question is ultimately "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

To satisfy the second Strickland prong, it must be established that counsel's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 687, 694. The Second Circuit normally

"requires some objective evidence other than defendant's assertions to establish prejudice," Pham v. United States, 317 F.3d 182, 182 (2d Cir. 2003), because "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding," Strickland, 466 U.S. at 693.

In the plea-bargaining context, "the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial."  Arteca, 411 F.3d at 320.  Further still, in the immigration-consequences context, the defendant must show that "he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty" and that "but for counsel's unprofessional errors, there was a reasonable probability that the [defendant] could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." Doe, 915 F.3d at 911 (citation omitted).

Because both parts of the Strickland test must be satisfied to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the other part is satisfied.  Strickland, 466 U.S. at 697 (noting that a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one"); see also Stouse v. Leonardo, 928 F.2d 548, 556 (2d Cir. 1991).

This Court now turns to the Strickland analysis.

> **1. Defense counsel misinformed Garcia as to the likelihood of his removal from the United States.**

A defense attorney's failure to inform a defendant that a guilty plea carries a risk of removal from the United States may constitute ineffective assistance of counsel. See Padilla, 559 U.S. at 368-75; Rodriguez v. United States, 730 F. App'x 39, 42 (2d Cir.

9

2018). Similarly, a defense attorney's advice that a defendant *may* be removed as a result of a guilty plea when removal is actually *mandatory* may also constitute ineffectiveness. See United States v. Al Halabi, 633 F. App'x 801, 803 (2d Cir. 2015).

Garcia claims that his attorney's performance fell below an objective standard of reasonableness because she wrongly advised him about the immigration consequences of his guilty plea. Garcia's allegations in this regard are inconsistent. On the one hand, Garcia claims that counsel told him that he "was entering a plea to a negotiated charge that *would not* subject [him] to deportation" and that counsel "promised" him that he would not be deported. See Affidavit of Josbel Garcia ("Garcia Aff."), Docket No. 696-4, ¶¶ 9, 14 (emphasis in original). On the other hand, Garcia claims that counsel told him that it was "extremely unlikely" that he would face immigration consequences from his plea because of certain protections afforded Cuban nationals under the Cuban Adjustment Act. See id. at ¶¶ 9-11.

The record does not support Garcia's claims that he thought he was pleading to a non-deportable offense or that counsel promised him that he would not be removed from the United States. Garcia swore in the plea agreement and during the plea allocution that he understood that his plea had immigration consequences and that no promises outside of those in the plea agreement were made to him. The plea agreement, which Garcia voluntarily endorsed, explicitly sets out the immigration consequences of his plea, including that his offense of conviction is a removable offense, that he could be removed from the United States, and that his removal was presumptively mandatory. (Plea Agreement, ¶¶ 13, 14.) The plea agreement further reflects Garcia's understanding that the effect of his guilty plea on his immigration status could not be predicted to a certainty,

but that in any event, Garcia wished to enter his guilty plea regardless of any immigration consequences, even if such consequences included automatic removal from the United States. Id. at 14.

Garcia confirmed his understanding of these provisions in both the plea agreement and at the plea allocution. In the plea agreement, Garcia acknowledged that he had read the full plea agreement, that he had a full opportunity to discuss the terms of the plea agreement with his lawyer, that the agreement represented the total agreement between himself and the government, that no promises or representations other than those contained in the plea agreement were made to him, that he understood all of the consequences of his guilty plea, that he fully agreed with the contents of the plea agreement, and that he was entering the plea agreement voluntarily and of his own free will. Id. ¶ 21 and p. 8. At the allocution, Garcia confirmed the he had separately consulted an immigration lawyer, confirmed his understanding of the immigration consequences of his plea, confirmed that no other promises had been made to him, and confirmed that he was acting voluntarily. See Plea Transcript, pp. 8-9, 10, 11.

Given this clear and complete record, there is no support for Garcia's present contention that he did not know that he was pleading to a deportable offense or that defense counsel promised him that he would never be removed from the United States. See United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001) (finding that a defendant's sworn statements during a plea allocution "carr[y] such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony").

But Garcia's other claim—that counsel misadvised him about the *likelihood* of

being removed to Cuba—finds support in the record.  Counsel explained at sentencing that based on the opinion of consulting immigration counsel, she advised Garcia that he was afforded certain protections from removal because he is a Cuban national.  See Sentencing Transcript, pp. 5-6.  While correctly stating that Garcia's status "doesn't mean a deportation order can't be filed against him," id., a fair reading of counsel's comments indicates that she advised Garcia that his chances of being removed from the United States were remote.  And this advice appears to have been rendered "since [counsel] was assigned," id., which was well before Garcia entered his guilty plea, see Docket No. 271.

Garcia maintains that counsel's assessment of his chances of being removed was outdated because the United States had been normalizing its relations with Cuba and had ended many of the protections previously afforded Cuban nationals, including deferred removal.  See Memorandum of Law, Docket No. 696-5, pp. 4-6.  The government does not contest that counsel's advice was wrong, and courts have recognized that such advice to Cuban nationals is objectively unreasonable.  See United States v. Ferrera, 10-CR-892 (VEC), 2020 WL 7342673, at *1-3 (S.D.N.Y. Dec. 14, 2020) (involving counsel's advice that Cuban national would be in "better shape" than non-Cuban nationals because the United States lacked diplomatic relations with Cuba).

Consequently, although this Court finds that Garcia knew that his guilty plea and conviction would subject him to removal and that he was not promised otherwise, Garcia nonetheless has established that counsel's advice concerning the likelihood that he would not be removed from the United States, which appears to have arisen directly from the immigration-law consultation, fell below an objective standard of reasonableness.  See

id.

### 2. Garcia was not prejudiced by counsel's representation.

To establish prejudice, Garcia must demonstrate that he placed particular emphasis on the immigration consequences of a guilty plea in deciding whether to enter one or not, and that if it were not for counsel's error, there is a reasonable probability that he could have either negotiated a plea with no immigration consequences or would have pursued an available defense at trial.  See Doe, 915 F.3d at 911.

This Court first has little trouble finding that Garcia was particularly concerned about the immigration consequences of any guilty plea given his personal and family ties to the United States.  See Garcia Aff. at ¶ 8.  Garcia came to this country in 2004, when he was just 13 years old, and became a permanent resident in 2009.  See id. at ¶¶ 3, 4.  He has two young sons and helps raise his fiancé's three children.  See id. at ¶ 7.  He also serves as a sign-language interpreter for his deaf parents, who reside in the United States.  See id. at ¶ 5.  Moreover, Garcia voiced concerns about being removed from the United States in conferences before this Court, see, e.g., Docket No. 602 ("Defendant not a US citizen which complicates plea."), and counsel indicated at sentencing that she and Garcia had discussed immigration concerns from the outset of her representation, see Sentencing Transcript, p. 5.  It is thus sufficiently established that Garcia was particularly concerned about the immigration consequences of any guilty plea.

But as to the remaining considerations, Garcia fails to demonstrate a reasonable probability that a removal-free plea was available or that he would have pursued an available defense at trial.  See Doe, 915 F.3d at 911.  Without any evidence, Garcia maintains that the government was amenable to a plea disposition that would not have

resulted in his removal from the United States, but that defense counsel failed to pursue such a resolution because she mistakenly believed that he was unlikely to be removed in any event.  This is pure speculation.  Garcia provides no evidence whatsoever in support of this claim, and nothing in the record suggests that the government was amenable to or tendered a plea offer free of immigration consequences.  See Thomas v. United States, 19-CV-5675 (PAE), 01-CR-579 (PAE), 2020 WL 3428148, at *5 (S.D.N.Y. June 23, 2020) (rejecting conjecture that counsel could have negotiated a plea devoid of immigration consequences as speculative in the absence of evidence); Santana v. United States, No. 12 Civ. 2150 (JSR)(GWG), 2013 WL 717284, at *4 (S.D.N.Y. Feb. 28, 2013) (finding against petitioner where he "provide[ed] no evidence whatsoever—other than speculation—that such a deal [with no immigration consequences] was or would have been available to him").  Nor does Garcia identify an alternative charge lacking immigration consequences that could reasonably have formed the basis of a different pretrial resolution.  Garcia therefore fails to establish a reasonable probability that counsel could have negotiated a plea that would have no impact on his immigration status.

So too, Garcia fails to establish a reasonable probability that he would have pursued an available defense at trial in the absence of counsel's error.  Garcia claims that he was ready to proceed to trial but decided to plead guilty only because of counsel's assurances that he was unlikely to face removal from the United States.  See id. at ¶¶ 12, 13.  Garcia does not, however, identify any available defenses; he simply claims that he would have elected to go to trial.  But that claim falters in the face of the government's case against him.[2]  See Lee v. United States, __ U.S. __, 137 S. Ct. 1958, 1968, 198 L.

---

[2] This claim is also inconsistent with Garcia's documented intention to resolve this matter via plea.  As early as December 2016, counsel advised that Garcia would not be going to trial.  See Docket No. 458.  Minute

Ed. 2d 476 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").

Garcia was indicted as part of the government's prosecution of the "Loiza Boys," a group of 10 men, including Garcia, who distributed controlled substances on the West Side of Buffalo. See Government's Trial Brief, Docket No. 595, p. 2. The indictment charged Garcia with conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin and a quantity of cocaine, in violation of 21 U.S.C. § 846. See Indictment, Docket No. 10 (Count 1). Each of Garcia's co-defendants entered guilty pleas, leaving Garcia as the lone defendant headed to trial. The government's trial proof was set to include statements by Garcia's co-conspirators, wiretap interceptions, testimony from law enforcement witnesses who observed Garcia selling heroin, and Garcia's own post-Miranda admission that he unlawfully distributed heroin. See id. at pp. 2-3, 7, 13. Garcia offers no viable defense to this evidence, which severely undermines his *post hoc* insistence that he would have proceeded to trial if it were not for counsel's erroneous advice. See Lee v. United States, __ U.S. __, 137 S. Ct. 1958, 1966, 198 L. Ed. 2d 476 (2017) ("A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial.").

If convicted at trial, Garcia would have been subject to a 10-year mandatory minimum sentence of imprisonment. See 21 U.S.C. § 841 (b)(1)(A). Instead, Garcia elected to accept the government's offer to plead guilty to using a communication facility

---

entries from subsequent appearances reflect Garcia's continuing efforts to press the government for suitable plea offers leading up to the ultimate plea disposition in this case. See Docket Nos. 476, 484, 500, 552, 567, 602, 606. Given this history, Garcia's present claim that he was dead set on proceeding to trial rings hollow.

to facilitate a drug felony, in violation of 21 U.S.C. § 843 (b), which carried no mandatory minimum sentence and a maximum sentence of four years' imprisonment. See Plea Agreement, ¶ 1. This reduced charge further yielded a sentencing range of 10-16 months' imprisonment, a far cry from the 10-year mandatory minimum Garcia faced if convicted at trial. See id. at ¶ 9. Given the significant benefits provided in the plea agreement, it is not objectively reasonable to conclude that Garcia accepted it only because counsel advised him that he was unlikely to be removed from the United States. See Thomas, 2020 WL 3428148, at *5 (finding that "palpable benefit" of plea agreement rendered "not credible" the petitioner's claim that the only reason for his guilty plea was counsel's mistaken belief that it would carry no adverse immigration consequences). Avoiding a lengthy period of incarceration no doubt significantly informed Garcia's decision to forego his trial right and plead guilty. See id.

Accordingly, this Court finds that although Garcia has demonstrated that he was particularly concerned about the immigration consequences of any guilty plea, he has not established a reasonable probability that but for counsel's incorrect advice, he could have either negotiated a plea with no immigration consequences or would have pursued an available defense at trial. See Doe, 915 F.3d at 911. He therefore fails to establish that he was prejudiced by his attorney's performance under the Strickland standard.

Because Garcia fails to demonstrate that his guilty plea came as the result of ineffective assistance of counsel, as alleged, a writ of error *coram nobis* is not required to achieve justice and will therefore not issue.

### C. Certificate of Appealability

For a certificate of appealability to issue, a petitioner must make a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make the required "substantial showing," Garcia must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam) (citations and internal quotation marks omitted). Garcia has made no such substantial showing of the denial of a constitutional right in this case. A certificate of appealability will therefore not be issued.

## IV. CONCLUSION

Because Garcia has not demonstrated a fundamental error that rendered his guilty plea irregular or invalid, see Foont, 93 F.3d at 78, he is not entitled to the extraordinary remedy of a writ of error *coram nobis* to disturb his valid conviction. Garcia's petition will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that the Petition for Writ of Error *Coram Nobis* (Docket No. 701) is DENIED.

FURTHER, that this Court hereby certifies, pursuant to 28 U.S.C. § 1915 (a)(3) and Rule 24 (a)(3) of the Federal Rules of Appellate Procedure, that any appeal from this Decision and Order would not be taken in good faith and therefore leave to appeal as a poor person is DENIED. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 is DENIED.

SO ORDERED.

Dated:    May 5, 2021
             Buffalo, New York

                                        <u>s/William M. Skretny</u>
                                        WILLIAM M. SKRETNY
                                        United States District Judge